# Paine Plumbing & Supply Co. *v.* McMurtray's Estate.

(In Banc.   April 12, 1948.)

[34 So. (2d) 676.   No. 36713.]

**Harold Cox,** of Jackson, for appellants and cross-appellees.

**Creekmore & Creekmore**, of Jackson, for appellee and cross-appellant.

**Roberds, J.,** delivered the opinion of the court.

W. O. McMurtray departed this life intestate June 16, 1946. Appellant, a partnership, probated two claims against his estate—one on October 7, 1946, for $5,155.39, the other on December 27, 1946, for $654.59. The administratrix, appellee here, contested the smaller claim on the ground it was not probated within the time required by law and the other on the general ground the estate did not owe it, except as to the amount of $2,512.42, which was admitted to be owing. The chancellor held that the smaller claim was presented for probate too late and that the larger claim was established to the amount of $3,833.-90, and entered a decree against the estate for that sum, plus annual interest at six percentum thereon from June 1, 1945. Paine prosecutes a direct appeal from that part of the decree disallowing the smaller claim and disallowing $1,321.49 of the larger claim and the administratrix cross-appeals from the allowance of any amount in excess of that admitted by her to be owing. The case, therefore, involves two questions: (1) Whether the claim filed October 7th was presented for probate within the time required by statute, and (2) what amount, if any, is established by the proof to be owing by the estate in excess of the admitted obligation of $2,512.42.

As to the first question, section 569, Mississippi Code 1942 requires all claims against the estates of deceased persons to be registered and probated within six months after the first publication of notice to creditors to present claims; otherwise, they will be barred. The first notice to creditors of this estate was published June 26, 1946. As stated, the claim in question was first presented for probate December 27, 1946. The chancellor held the claim was not presented within the six months required by said section. This holding was in accord with the method an-

nounced in Langley v. State, 170 Miss. 520, 155 So. 682, and Williams Brothers v. Bank of Blue Mountain, 132 Miss. 178, 95 So. 843, for computing time based upon monthly periods under said statute. His decision upon that question was correct.

The second question is whether the evidence establishes the purchase by and delivery to McMurtray of the disputed items included within the larger claim and, if so, their non-payment.

Paine was engaged in the sale of plumbing, heating, and well-drilling appliances and supplies, with office at Jackson, Mississippi. McMurtray was in the business of drilling water wells, his work, during the time here involved, being confined to drilling wells for public schools and other public institutions. He began purchasing supplies from Paine in 1944 and continued to his death June 16, 1946. On the question of sale and delivery to McMurtray, G. F. Reeves, salesman and bookkeeper for Paine, George Kitchens, who worked in Paine's warehouse, and Ray. Dunlap, who was an employee of McMurtray, testified that of their personal knowledge and from original records made by themselves, McMurtray purchased and was delivered the aggregate of $3,109.30 of the articles in dispute. That lacks only $45.58 of establishing the sale and delivery to McMurtray of all the items in question. In addition to that, Dunlap testified that, under the war conditions then existing, it was necessary, in order that McMurtray be able to purchase supplies and Paine be able to replenish his stock, that priority orders be signed for all purchases by McMurtray; that he, Dunlap, was duly directed and authorized by McMurtray to sign such priority orders. Dunlap did sign such priority orders covering all items in dispute. He said he was conscious of the duty to his Government and of the gravity of his acts in signing these orders, and that he thoroughly investigated and verified the fact of purchase and delivery of each article before signing such orders. In addition to this, it is disclosed by the testimony of the administra-

trix herself, who assisted McMurtray about his office work, that the original invoices covering all items in question were in the possession of McMurtray at the time of his death. It is shown, without dispute, that the custom was to deliver either by person or mail to McMurtray these original invoices when the goods were purchased and delivered.

The evidence of non-purchase and non-delivery of the disputed items is this: As stated, original invoices were made of the purchases. Carbon copies were made of these originals. The charges were made on the ledger from the carbon copies. Paine was short of help. Sometimes there was a delay in posting to the ledger the billed goods shown on the carbon copies. Mrs. McClurkin, secretary and office-assistant to Paine during the time in question, testified that she erroneously placed these carbon copies in the priority file without posting them to the ledger. These were the carbon copies Dunlap had verified, the originals of which had been delivered to McMurtray, and on which copies Dunlap had signed the priority orders. These constitute the items in question. Mrs. McClurkin further testified that shortly after the death of Mr. McMurtray a Miss Mitchie, office-assistant and bookkeeper for McMurtray, came to Paine's office to investigate a charge for a pump, and Miss Mitchie brought with her the said original invoices, and that she, Mrs. McClurkin, then discovered they had not been charged to McMurtray. She then explained that situation to Miss Mitchie, who raised no question whatever as to whether McMurtray had received the articles charged to him on the original invoices. This occasioned the investigation and consequent discovery of the error in placing in the priority file the carbon copies of such invoices before the charges were made therefrom onto the ledger. The charges were then made and the original invoices were returned to McMurtray. Naturally, because of the foregoing error, the monthly statements mailed to McMurtray before his death did not show him charged with these

articles. The testimony of Mrs. McClurkin is uncontradicted. Miss Mitchie did not testify.

And now as to the credits: The probated claim charges McMurtray with a total of $14,105.50 during the entire time he bought from Paine and credits him with seven payments, aggregating $8,659.98, with an additional credit of $290.13, adjustment on the pump. The administratrix mentions no additional specific credit to which she is entitled. She simply says in general terms the estate owes no more than she admitted owing. She introduced no proof of any amount which should have been, but was not, credited on the account. She did say Mr. McMurtray, in the course of conducting his business, sometimes paid cash for his supplies. It is shown that he bought in rather large quantities from persons other than Paine, but Mrs. McMurtray very frankly stated she knew of no cash purchases by McMurtray from Paine or any payment made by McMurtray not shown on the probated account. However, she further said that McMurtray had a vertical file on which was marked "bills paid" and one on which appeared "unpaid bills", and that after his death she found the said original invoices in the bills-paid file. From this, she deduced the items had been paid. But she further stated that the invoices themselves were not marked paid. The force of this deduction was somewhat weakened by the fact that she was requested a number of times while on the stand to bring these original invoices into court, but they were never produced. On the other hand, Mrs. McClurkin testified the probated claim showed the accurate credits and that the estate was entitled to no credit other than as shown thereon. Mize, who audited the books of McMurtray, made no claim for additional credits. W. H. Howie, an auditor, and who assisted in installing a set of books for McMurtray shortly before his death, testified that McMurtray had no ledger, that he had only a journal, that he, Howie, in the course of his audit, had made a careful investigation and check of all bank deposits, receipts,

vouchers, paid checks, records, etc., in the office of Mc-Murtray, and that he found no evidence of any kind that McMurtray had made any payments to Paine other than those shown on the probated claim. This witness was asked, ''You are unable to tell this court that Mr. McMurtray ever paid Mr. Paine anything on this account except payments credited on the probated claim; is that right? A. That is correct.''

Summed up, this record discloses no substantial evidence that any item charged on this account was not bought by and delivered to Mr. McMurtray, nor is there any such evidence showing that the estate is entitled to any credit other than the credits shown on the probated account.

This does not reverse the chancellor on his findings of fact. Rather it supports that finding. He held that the proof established that the estate owed Paine one-half of the excess of the probated claim above the amount admitted to be owing. There is no proof applying especially to establish the excess he found to be owing which does not apply to establish the balance of such excess. In other words, the proof as to charges and credits applies alike to the amount allowed and the amount disallowed by the chancellor.

The decree charged the estate with interest from June 1, 1945. The administratrix contends that interest on $2,642.97, the amount in dispute after eliminating the smaller claim, should not begin to run until the date of the probate of the larger claim. We think that is correct on the record before us. The monthly statements contain this printed statement: ''Bills due When Presented.'' It is not shown that any statement claiming said amount to be owing to Paine was presented McMurtray or his administratrix until the claim was probated October 7, 1946; therefore, interest should begin to run on that date on that amount.

Appellee says that it was error to admit any evidence based upon the charges in the ledger pertaining to the

amount in controversy. She says the proof shows these charges were not made when the goods were purchased, and, therefore, the books were not kept in the usual and regular manner. The delay in making the entries and the bases for that action were fully explained and the chancellor was in position to give due weight to such entries. In addition, the account was established by other original records made by the witnesses themselves and from their personal knowledge. There was no error in this respect.

Judgment will be entered here aginst the Administratrix and in favor of appellant for the principal sum of $2,512.42, with interest thereon at 6% per annum from June 1, 1945, and for the principal sum of $2,642 97, with interest thereon at 6% per annum from October 7, 1946, until paid.

Affirmed in part, reversed in part and judgment here.